11 CIV 2342



**ECF Case**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

PREGNANCY CARE CENTER OF NEW YORK
(Incorporated as Crisis Pregnancy Center of New York), a
New York Not-for-Profit Corporation; BORO
PREGNANCY COUNSELING CENTER, a New York
Not-for-Profit Corporation; and GOOD COUNSEL, INC.,
a New Jersey Not-for-Profit Corporation;

        Plaintiffs,

    v.

THE CITY OF NEW YORK; MICHAEL BLOOMBERG,
Mayor of New York City, in His Official Capacity; and
JONATHAN MINTZ, the Commissioner of the New York
City Department of Consumer Affairs, in His Official
Capacity;

        Defendants.

Civil Case No.

**VERIFIED COMPLAINT**

**Jury Trial Demanded**

## PRELIMINARY STATEMENT

1.    During a time when the majority of pro-choice New York City women believe

that the City's abortion rate is too high,[1] the City Council passed a bill that imposes fines and

possible jail time to drive women-in-need away from non-profit centers that freely inform and

assist those women in choosing options other than abortion. Such pregnancy centers, including

Plaintiffs Pregnancy Care Center in Staten Island and Boro Pregnancy Counseling Center in

---

[1] In a poll taken by McLaughlin & Associates on February 8–10, 2011, of 800 likely voters in New York, NY, 57%
of pro-choice women answered "too high" to the question, "If you knew the fact is that 41% of all viable
pregnancies in New York City ended in abortion in 2009, would you say that is too high, just right or too low?", and
70% of pro-choice women answered "agree" to the question, "If you knew that 60% of African American
pregnancies in New York City are terminated in abortions, would you agree or disagree that this rate of abortion in
the African American community is too high?" Poll methodology and results available at
http://campaign.r20.constantcontact.com/render?llr=iffsc9cab&v=0015_lm2NH4ZFKY4cYoo3JhyOt7WDh2lyzCa-
j-40eajBvssxwomS7U13uQ_3_Uo-kVwCvgM6pn_jRwx7AbO2_B2TgyybMOMg4NPcZpK4ZGWy1bhGMlS2Mz-
oaUsdRr2qC6pnfNA5eENa8%3D (last accessed Mar. 18, 2011).

Queens, offer free and compassionate information and assistance to willing women in their communities, especially to the poor and often to minorities. The selfless work of these centers is recognized by local public hospitals and clinics, who refer many women to them. But when the law goes into effect on July 14, 2011, these centers face the prospect of harsh fines by the City's Consumer Affairs department upon no advance warning, merely because they offer free, non-medical information and assistance to women who ask for it.

2.    Proposed Introductory Bill 371-A, creating Subchapter 7 in Title 20, Chapter 5 of the City Administrative Code (hereinafter "Bill 371-A"), requires no finding whatsoever of wrongdoing to trigger its draconian penalties. Instead, the Bill is crafted with a myriad of vague terms that give the City's Consumer Affairs Commissioner unfettered power to decide that centers offering abortion alternatives have what he arbitrarily deems the "appearance" of a medical facility. On this basis, the Commissioner will compel these non-commercial speakers to announce government-mandated disclaimers, in whatever form he dictates, and to be forced to purchase extra ad space for the City's disclaimers any time they promote their services to women in need. Bill 371-A's vague terms prevent centers from having any idea if the Commissioner can or will decide that they must comply with the bill. This imprecision is intentional: the City Council's comments make it clear that it sought to chill the efforts of pregnancy centers based on their pro-life viewpoint, while exempting abortion-offering facilities. The bill even appears to deem maternity homes such as plaintiff Good Counsel, Inc ("Good Counsel") as having the "appearance" of a doctor's office, even though all they do is offer safe and caring homes in which abused, abandoned or homeless pregnant and parenting mothers can live before and after they choose birth.

2

3.    Bill 371-A's compelled-speech mandate is a blatant violation of the freedom of speech. Its content-based and viewpoint discriminatory characteristics violate our nation's most basic principles allowing free discourse on controversial topics.    The Bill gives unbridled discretion for the Commissioner to target pro-life centers, thus violating their freedom of speech and due process. Bill 371-A even attempts to expand the meaning of medical practice to include nonmedical activities and mandate state licensure, in violation of New York law.  Bill 371-A's related legal flaws are enumerated in greater detail below.

4.    Plaintiffs desire to offer their free, nonmedical, non-commercial assistance to women without the threat of Bill 371-A forcing them to recite government-mandated speech, to be priced out of advertising to women in need, and to face fines, closure and jail time.    If Plaintiffs are not awarded preliminary injunctive and declaratory relief before Bill 371-A goes into effect in less than 120 days their constitutional rights will suffer irreparable harm.

5.    Therefore, Plaintiffs file this civil rights action pursuant to the First and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. § 1983, as well as parallel provisions of the New York Constitution, and New York State and City laws.    In addition to preliminary relief, Plaintiffs seek permanent injunctive and declaratory relief against this unconstitutional and illegal bill, attorneys fees pursuant to federal statute, and other relief as the Court deems appropriate.

## JURISDICTION AND VENUE

6.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 & 1343 as an action premised upon the existence of federal questions and deprivations of federally protected rights under the Constitution of the United States.  This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

7.     This Court has authority to declare the rights and legal relations of the parties and to order further relief, pursuant to 28 U.S.C. §§ 2201–02, because this is a case of actual controversy within this Court's jurisdiction.

8.     Venue is proper under 28 U.S.C. § 1391(b)(1) & (2). Defendants, and their authorization of enforcement authority under Bill 371-A, are present in the Southern District of New York. A substantial part of the events giving rise to Plaintiffs' claims are in this District, including the passage of Bill 371-A and activities relating to its enforcement by Defendants located here.

9.     Defendants are subject to personal jurisdiction in this District due to their presence and activities therein.

## PARTIES

10.     Plaintiff Pregnancy Care Center of New York (PCCNY) (incorporated as Crisis Pregnancy Center of New York) is a New York not-for-profit corporation that is dedicated to providing free nonmedical information, assistance and support to women as they experience an unplanned pregnancy, from a viewpoint that includes not offering abortions or emergency contraception or referrals for them. PCCNY is located at 38 Tenth Street, Staten Island, NY, 10306. Its Executive Director is Joanne Reilly.

11.     Plaintiff Boro Pregnancy Counseling Center (BPCC) is a New York not-for-profit corporation that is dedicated to providing free nonmedical information, assistance and support to women as they experience an unplanned pregnancy, from a viewpoint that includes not offering abortions or emergency contraception or referrals for them. BPCC is located at 20306 Rocky Hill Road, Bayside, NY, 11361. Its Executive Director is Nicole Baker Bernacet.

4

12.     Plaintiff Good Counsel is a New Jersey not-for-profit corporation.    Good Counsel's mission is to help homeless, abused or abandoned pregnant and parenting women and their children by providing a loving family environment in safe and secure homes before and after birth. Good Counsel offers all its services from a viewpoint that includes not offering abortions or contraception or referrals for them. Good Counsel runs five such homes in the New York greater metropolitan area, including a home in Staten Island, and one in the South Bronx. Good Counsel's headquarters is located at 411 Clinton Street, Hoboken, NJ, 07030.    Its Executive Director is Christopher Bell.

13.     At all times relevant to the material herein, Defendant The City of New York was and still is a municipal corporation, duly organized and existing under and by virtue of the Laws of the State of New York, and including the Boroughs of Queens and Staten Island. The City resides and is found in the Southern District of New York.

14.     The Defendant Michael Bloomberg is the Mayor of New York City, is sued in his official capacity, and at all times relevant to this action resided and continues to reside in the City and State of New York.

15.     The Defendant Jonathan Mintz is the Commissioner of the Department of Consumer Affairs of the City of New York, is sued in his official capacity, and at all times relevant to this action resided and continues to reside in the City and State of New York.

16.     Mayor Bloomberg is the chief executive officer in the City of New York, he appoints the Commissioner of the Department of Consumer Affairs of the City of New York, and the Commissioner ultimately reports to the Mayor. References to the Commissioner and his enforcement responsibilities herein shall include by implication the Mayor's executive responsibility over the Commissioner and the Department of Consumer Affairs.

## ALLEGATIONS

17.    Plaintiffs offer loving, practical, nonmedical information and support for women who faced unplanned pregnancies.

18.    PCCNY and BPCC offer information and viewpoint-motivated support to women, including women who may be considering pregnancy options and preparing for abortion alternatives, while Good Counsel focuses its efforts on housing pregnant women who need a place to stay before and after they choose to give birth, and providing them with life skills.

19.    Plaintiffs are not-for-profit organizations that are supported by community (non-governmental) donations including volunteer time, items that pregnant women need, and financial assistance.

20.    PCCNY and BPCC offer all their services for free.

21.    Good Counsel offers its services for free, and a mother's indigence or inability to contribute is not an obstacle to her receiving Good Counsel's full array of services.  However, mothers living in Good Counsel homes who are on public assistance with a rent subsidy are expected to pass the rent subsidy to Good Counsel while they are residing there, and if a mother residing at Good Counsel homes is employed, 10% of her income is expected to be contributed to Good Counsel.

22.    Many women that Plaintiffs help are or may have been considering abortion only because their material and social needs made them feel pressure to do so, but when PCCNY and BPCC are able to inform them of assistance that is available, including from sources such as Good Counsel homes, and to offer them caring support, the women are empowered to fulfill their desires and give birth.

6

Pregnancy Care Center of New York

23.     PCCNY has been serving women from Staten Island and surrounding areas for over 25 years.

24.     PCCNY is highly respected in the Staten Island community. A large local medical clinic regularly refers women to PCCNY for nonmedical material assistance and information.

25.     PCCNY is an affiliate of CareNet, a national umbrella of over 1,100 pregnancy centers that offer hope to women facing unplanned pregnancies by providing practical help and emotional support.

26.     PCCNY offers no medical services.

27.     PCCNY does not depict or suggest that any of its services are medical, including all those discussed herein.

28.     PCCNY specifically tells clients that all its services are nonmedical.

29.     PCCNY provides women with peer counseling by four or five non-licensed counselors.

30.     PCCNY's counseling discusses the woman's material nonmedical needs; how PCCNY can assist in meeting the woman's material nonmedical needs; parenting skills; information about alternatives to continue her education; information about breastfeeding; counseling women and other clients after having been involved in abortion; abortion alternatives; the characteristics of abortion from the counselor's nonmedical perspective; referrals of women to licensed medical clinics for non-abortion services; referrals of women to domestic violence agencies; referrals of women to entities that can meet housing needs; and referrals of women to adoption agencies.

7

31.    PCCNY offers women a variety of non-financial, nonmedical material assistance to meet their needs during and after pregnancy.  This material assistance includes such things as diapers, formula, baby clothes, maternity clothes, bassinettes, layettes, baby furnishings, car seats, and a variety of related items.

32.    PCCNY hosts an annual Christmas party for the underprivileged women and families it has served, to provide toys and presents for their children, material items for their family use, and an opportunity for them to celebrate the season.

33.    PCCNY hosts community events to obtain donations of material goods that it can in turn provide to women, such as "baby showers" where churches and other people supply PCCNY with a variety of items that are helpful to women and clients.

34.    PCCNY offers free, self(client)-administered and self(client)-interpreted pregnancy tests.

35.    The pregnancy test that PCCNY offers is a self-administered urine pregnancy test, the "Mainline Confirm hCG," produced by Mainline Technologies.  The test is a small individually wrapped plastic device.  The test is administered by the woman by obtaining a urine sample from herself, applying the urine to a chemically treated portion of the device, and waiting for the requisite period of time for the device to indicate the presence of hCG that indicates whether the woman is pregnant.

36.    PCCNY strictly ensures that the pregnancy tests are wholly self-administered and self-interpreted by the woman.  The PCCNY staff member or volunteer does not gather the sample, does not apply the test to the sample, and does not interpret the sample or diagnose the results.  Instead the woman is given the sealed pregnancy test kit and the manufacturer's instructions, follows the instructions herself, signs a form indicating that the kit is purely self-

8

administered, and signs the form after the test indicating that the test was purely self-interpreted. The PCCNY counselor does not sign off or comment on any interpretation, and indicates clearly throughout the process that the test is purely self-administered and self-interpreted.

37.    PCCNY's offering of self-administered and self-interpreted pregnancy tests is not a medical service.

Boro Pregnancy Counseling Center

38.    BPCC has been serving women from Queens and surrounding areas for over 10 years.

39.    BPCC is highly respected in the Queens community. Several local hospitals and clinics regularly refer women to BPCC for nonmedical material assistance, information and classes, as described herein.

40.    BPCC is an affiliate of CareNet.

41.    BPCC offers no medical services.

42.    BPCC does not depict or suggest that any of its services are medical, including all those discussed herein.

43.    BPCC specifically tells clients that all its services are nonmedical.

44.    BPCC provides women with counseling by one counselor, Nicole Baker Bernacet.

45.    Mrs. Bernacet is a Licensed Mental Health Counselor in New York State and a National Certified Counselor under the National Board of Certified Counselors.

46.    BPCC's counseling through Mrs. Bernacet is not a medical service.

47.    BPCC clearly describes its counseling through Mrs. Bernacet as not being a medical service, and her licensure as not being medical.

9

48.    BPCC's counseling discusses the woman's material nonmedical needs; how BPCC can assist in meeting the woman's material nonmedical needs; information about alternatives to continue the woman's education; counseling of women and other clients after having been involved in abortion; abortion alternatives; the characteristics of abortion from the counselor's nonmedical perspective; information about social services available including New York's PCAP (Pregnancy Care Assistance Program), which in turn connects women with services such as WIC; referrals of women to hospitals or clinics for non-abortion services; referrals of women to domestic violence agencies; referrals of women to entities that can meet housing needs; and referrals of women to adoption agencies.

49.    BPCC offers regular classes teaching men fatherhood skills.

50.    BPCC offers regular parenting classes onsite for women who are pregnant or recently gave birth, calling these classes the "Parent Empowerment Program." BPCC offers clients onsite childcare during these classes.

51.    Through the Parent Empowerment Program, BPCC offers women a variety of non-financial, nonmedical material assistance to meet their needs during and after pregnancy. This material assistance includes such things as diapers and toiletries, maternity clothes, baby/children's clothing and shoes, infant tubs, baby carriers, baby chairs or bouncers, strollers, cribs, bassinettes pack & plays, and other similar items when available.

52.    BPCC hosts an annual Christmas party for the underprivileged women and families they have served, to provide toys and presents for their children, material items for their family use, and an opportunity for them to celebrate the season.

53.    BPCC hosts community events to obtain donations of material goods that they can in turn provide to women, such as "diaper drives" where churches and other people supply BPCC with a variety of items that are helpful to women and clients.

54.    BPCC offers free, self(client)-administered and self(client)-interpreted pregnancy tests.

55.    The pregnancy test that BPCC offers is the same test that PCCNY offers: a self-administered urine pregnancy test, the "Mainline Confirm hCG," produced by Mainline Technologies. The test is a small individually wrapped plastic device. The test is administered by the woman by obtaining a urine sample from herself, applying the urine to a chemically treated portion of the device, and waiting for the requisite period of time for the device to indicate the presence of hCG that indicates whether the woman is pregnant.

56.    BPCC strictly ensures that the pregnancy tests are purely self-administered and self-interpreted. The BPCC counselor does not gather the sample, does not apply the test to the sample, and does not interpret the sample or diagnose the results. Instead the woman is given the sealed pregnancy test kit and the manufacturer's instructions, follows the instructions herself, signs a form indicating that the kit is purely self-administered, and signs the form after the test indicating that the test was purely self-interpreted. The BPCC counselor does not sign off or comment on any interpretation, and indicates clearly throughout the process that the test is purely self-administered and self-interpreted.

57.    BPCC's offering of self-administered and self-interpreted pregnancy tests is not a medical service.

Good Counsel Homes

58.     Good Counsel has been serving women and families in the greater New York City metro area for 26 years.

59.     Good Counsel's mission is to help homeless, abused or abandoned pregnant women by providing them a loving family environment in a safe and secure home.

60.     Good Counsel runs five homes in the region where women and, as applicable, their children can come and live during their pregnancy and for up to a year afterwards.

61.     Among these five homes is a Good Counsel home in Staten Island that has been open since 1987, and one in the South Bronx that Good Counsel acquired in 1991.

62.     Good Counsel's home in the South Bronx can house up to fourteen women at a time, plus their children, and about thirty-five women, plus their children, during the course of a year. Good Counsel's home in Staten Island can house up to nine women at a time, plus their children, and about thirty women, plus their children, in the course of a year. Good Counsel mothers have individual rooms in their homes.

63.     At these homes, Good Counsel's staff provides residents housing, food, clothing, non-licensed nonmedical counseling, post-abortion reconciliation, parenting classes, life skill programs, vocational assistance, computer skills, assistance to transition to life after leaving the home, referrals to outside psychological assistance, referrals for both prenatal and general health medical care, and practical support for meeting the residents' needs during their stay.

64.     Practical support to the pregnant women residents sometimes means that Good Counsel homes' staff help the women contact outside medical clinics and insurance agencies so that the women can arrange care for themselves with those clinics and agencies. Good Counsel

12

homes' staff also assists the women in obtaining transportation to receive such outside medical care.

65.    Once or twice a year, a woman considering abortion may come to a Good Counsel Home by referral, and at that time Good Counsel homes' staff will give her information about abortion, abortion alternatives, and available assistance from a nonmedical, non-judgmental abortion-opposing viewpoint.

66.    Good Counsel offers no medical services.

67.    Good Counsel does not depict or suggest that any of its services are medical, including all those discussed herein.

68.    On or around October 2010 staff of the City of New York emailed the director of Good Counsel, Christopher Bell, to ask if he wished to testify in the process that led to the passage of Bill 371-A.

Overview of Plaintiffs' Noncommercial, Pro-Life Free Speech Services

69.    The services of PCCNY, BPCC, and Good Counsel all come in the form of either: various kinds of information, including but not limited to education and counseling, all of which is nonmedical; nonmedical material assistance of various forms; and, in the case of PCCNY and BPCC, the nonmedical distribution of self-administered, self-interpreted pregnancy tests.

70.    PCCNY, BPCC, and Good Counsel engage in no ultrasounds, sonograms, physical examinations, pelvic examinations, or clinical laboratory services.

71.    The information that PCCNY, BPCC, and Good Counsel offer constitutes a substantial and significant proportion of the services that they offer.

72.    The information that PCCNY, BPCC, and Good Counsel offer is speech from their viewpoint of non-judgmental support for abortion-alternatives and opposition to abortion.

13

73.    PCCNY, BPCC, and Good Counsel do not perform or refer for abortion or emergency contraception.

74.    None of the services, information and material assistance that PCCNY, BPCC, and Good Counsel offer are offered in support of abortion.

75.    All services, information and material assistance that PCCNY, BPCC, and Good Counsel offer are inextricably intertwined with and offered in furtherance of their viewpoint of non-judgmental support for abortion-alternatives and opposition to abortion.

76.    The material assistance that PCCNY, BPCC, and Good Counsel offer is offered at no cost to the women and other clients who receive that assistance (except sometimes at Good Counsel homes regarding rent subsidies and 10% income contribution as described above).

77.    The information that PCCNY, BPCC, and Good Counsel offer is noncommercial speech.

78.    The viewpoint-motivated offering and providing of free material assistance by PCCNY, BPCC, and Good Counsel are not commercial.

79.    PCCNY and BPCC offer or propose no commercial transactions to their clients.

80.    Good Counsel offers and proposes no commercial transactions regarding any activity that Bill 371-A is designed to regulate.

81.    Good Counsel's expectation for some of their resident mothers to provide rent subsidy payments, and minimal income contributions if they are working, that are not applied to exclude women from receiving services if they cannot afford to do so, is not a commercial transaction, and if the Commissioner considers it to be a pregnancy service subjecting Good Counsel to regulation under Bill 371-A his doing so would be arbitrary and viewpoint discriminatory.

14

Bill 371-A

82.    The New York City Council passed Bill 371-A on March 2, 2011, and the Mayor signed the bill on March 16, 2011. The Bill goes into effect July 14, 2011.

83.    Bill 371-A targets Plaintiffs' caring, nonmedical support of pregnant women with compelled speech, fines, and potential closure and jail time.

The City Council's Report Specifies that Bill 371-A Targets Abortion-Opposing Centers

84.    The New York City Council describes Bill 371-A and its legislative history in great detail in its March 2, 2011, "Report of the Human Services Division" (hereinafter "371-A Report"). The 371-A Report is attached as Exhibit 1.

85.    The 371-A Report specifies, in a variety of ways, that Bill 371-A specifically targets pregnancy centers that operate from an abortion-opposing viewpoint, and does not target centers that operate from an abortion-supporting viewpoint.

86.    The 371-A Report declares it to be "confus[ing]" that a PSC would be listed in the Yellow Pages under the category of "abortion." 371-A Report at 7.

87.    By this statement, the 371-A Report considers PSCs, as a category, to be centers that do not offer abortion or refer for abortion, which is why it would be confusing (rather than appropriate) for them to be listed under abortion in the Yellow Pages.

88.    Bill 371-A regulates what it calls "Pregnancy Services Centers."

89.    In referring specifically to Bill 371-A's category of Pregnancy Services Centers (which the 371-A Report abbreviates as "PSCs"), the 371-A Report declares that "Nearly all of these centers offer free pregnancy testing and at least two of the PSCs in New York City offer ultrasounds on site." 371-A Report at 2.

15

90.    That specific description of PSCs by the 371A Report cites another report by the abortion-advocacy organization NARAL Pro-Choice N.Y., "She Said Abortion Could Cause Breast Cancer: A Report on the Lies, Manipulations, and Privacy Violations of Crisis Pregnancy Centers (2010)." *Id.* (hereinafter the "NARAL Report").

91.    The NARAL Report specifically and only targets "anti-choice" centers, that is, pro-life and abortion-opposing centers, who offer their services from a viewpoint that opposes abortion. NARAL Report *passim*.

92.    The 371-A Report's discussion of Bill 371-A's category of Pregnancy Services Centers footnotes and relies on the NARAL Report's characterization of PSCs multiple times. 371-A Report at 2–10.

93.    The 371-A Report defines Pregnancy Services Centers coextensively with the NARAL Report's discussion of Crisis Pregnancy Centers.

94.    In their effort culminating in Bill 371-A, the City Council began with an October 12, 2010 press conference and press release announcing their efforts.  The press release, still posted on the City Council's website, is attached as Exhibit 2.

95.    At the press conference, bill sponsors appeared with pro-abortion organizations and abortion providers, relying immediately and centrally on the NARAL Report to define their target:

> Council Speaker Christine C. Quinn, along with Council Member Jessica Lappin, today announced legislation to protect women seeking help at limited service pregnancy centers (often referred to as crisis pregnancy centers) in New York City. NARAL Pro-Choice New York also released the results of an investigation on these centers throughout the five boroughs that documented a variety of disturbing tactics designed to mislead or misinform women seeking pregnancy related services. Joining the Council were Kelli Conlin, President of NARAL Pro-Choice New York, Joan Malin, President and CEO of Planned Parenthood New York City, and a coalition of advocates who worked together with the Council on its response to this issue.

16

Exh. 2 at 1.

96.     From the beginning, the legislative effort aimed only at abortion opposing centers. "These anti-choice centers mislead and manipulate women to push an agenda. My bill would require that these centers tell women they are not medically licensed, often do not have doctors present, and don't treat the information they receive as confidential. It's time to regulate these centers and protect New York women," Councilwoman Jessica Lappin said. *Id.* a 2.

97.     Sandwiched between quotes of council sponsors, the City Council press release quotes abortion-supporters and/or providers Kelli Conlin, President of NARAL Pro-Choice New York, and Joan Malin, President and CEO of Planned Parenthood. *Id.* The Council's press release also includes a quote from Veronica Bayetti Flores, Senior Policy Analyst for National Latina Institute for Reproductive Health, and the press release concludes by listing not only the Council's phone number but phone numbers for NARAL Pro-Choice NY and Planned Parenthood. *Id.* at 3.

98.     The Council quotes no abortion-opposing persons in its press release and presented none at their press conference, and cites no person negatively concerned about any pregnancy center that supports abortion.

99.     The Council, through the statement from Conlin in its press release, explained that the purpose of the legislative effort and her report was to combat "biased counseling [and] anti-abortion propaganda." *Id.*

100.    The Council further explained, through the statement from Malin in its press release, that the pregnancy centers the Council sought to regulate by definition target Planned Parenthood centers that provide abortion. *Id.*

101.    Council Member Julissa Ferreras, Chair of the Women's Committee that authored the 371-A Report, further made it clear that the Council was specifically targeting pro-life ideas: "The fact that there are anti-abortion groups operating fake health centers in order to terrorize vulnerable women into forgoing their reproductive rights is an outrage. "'Abortion alternative' centers function as retail fronts for an ideology that is profoundly anti-woman . . . and which counsel women to follow medieval doctrines regarding reproductive health." *Id.* at 2–3.

102.    Council Member Diana Reyna likewise emphasized that the Council sought to vindicate "[t]he right of a woman to choose," and to ensure women receive facts, but "not ideologies." *Id.* at 3.

103.    The 371-A Report on the legislative history of Bill 371-A includes a November 16, 2010 hearing. 371-A Report at 2.

104.    Upon information and belief, during the November 16, 2010 hearing Councilman Daniel J. Halloran asked representatives from the New York City Department of Hygiene and Mental Health, the New York City Department of Consumer Affairs, and the New York State Health Department, if they had ever received any complaints about pregnancy services centers improperly offering or claiming to offer medical services or engaging in fraud. All of them said they had never received such a complaint.

105.    As justification for Bill 371-A, the only complaints or alleged problems about pregnancy services centers improperly offering or claiming to offer medical services in New York City were complaints or alleged problems brought forward by abortion-performing or abortion-supporting organizations or newspaper reporters, all in connection with investigations conducted by organizations avowedly hostile to the pro-life message of pregnancy centers and conducted for the specific purpose of shutting pro-life pregnancy centers down.

18

106.    In its description of some of those who testified at the November 16, 2010 hearing, the 371-A Report lists multiple organizations that support legal abortion, including "the New York Civil Liberties Union, NARAL, the Center for Reproductive Rights and other reproductive health care advocates, . . . [and] Planned Parenthood." *Id.*

107.    That description also lists actual providers of abortion, including Planned Parenthood and other health care providers. *Id.*

108.    But that description separates, from all these advocates of legal abortion and providers of abortion, "pregnancy services centers," as entities that also, distinctly, testified. *Id.*

109.    By that distinction, the 371-A Report again emphasizes that PSCs, as a category, are centers that oppose abortion, as distinct from providers or supporters of abortion.

110.    The 371-A Report proceeds to emphasize testimony from an "abortion counselor" at the abortion-supporting Center for Reproductive Rights, offered during the November 16 hearing, who in the eyes of the 371-A Report showed that "PSCs may cause women to experience delays in receiving reproductive health care," specifically, "a real and safe abortion procedure." *Id.* at 3.

111.    Such testimony, and the conclusion drawn by the 371-A report, again considers PSCs as a category as only centers that oppose abortion.

112.    The 371-A Report then declares that "To further the appearance that they are medical facilities, some PSCs model their facilities after clinics or doctors' offices." *Id.* For this assertion the 371-A Report specifically footnotes a New York Daily News article discussing only PSCs that are "Abortion Foes . . . Crisis Pregnancy Center[s]," and a report by the legal-abortion supporting organization the National Abortion Federation entitled "Crisis Pregnancy Centers: An Affront to Choice," which refers only to abortion-opposing "crisis pregnancy centers." *Id.*

113.    Next the 371-A Report makes assertions regarding "PSCs" and where they "choose to locate," and in doing so cites the NARAL Report, a New York Times article, and the website of a pregnancy services center that opposes abortion. All three sources exclusively focus on PRCs, categorically, as entities that oppose abortion. *Id.* at 4.

114.    The 371-A Report then cites as supposed examples of PRC activity a 1998 report by the Family Research Council (dealing with only abortion-opposing PRCs), and a list of such PRC names in New York including Expectant Mother Care, Crisis Pregnancy Center, and Pregnancy Resource Services, all of which oppose abortion. *Id.* at 4–5.

115.    In the same paragraph the 371-A Report contrasts a PRC with "an abortion provider," and quotes the opinion of a New York Times reporter whose article objected to only abortion-opposing PRCs on these grounds. *Id.* at 5.

116.    The 371-A Report goes on to use the following examples of centers and activities it is concerned about, all of which focus on abortion-opposing centers:

- an abortion-opposing mobile PRC;

- an abortion-opposing PRC that allegedly in some way resulted in a woman not getting an abortion according to a second-hand account;

- the same aforementioned abortion counselor from the Center for Reproductive Rights complaining about only abortion-opposing PRCs;

- a 1987 New York Times article specifically objecting to "Anti Abortion" "Pregnancy Centers" but not including abortion supporting centers the scope of pregnancy centers it objected to;

- a 1989 New York Magazine article by the pro-choice N.Y. Attorney General against three abortion-opposing PSCs but no abortion-supporting entities; and
- a 2002 investigation by the pro-choice N.Y. Attorney General of nine abortion-opposing PSCs but no abortion-supporting entities.

*Id.* at 5–9.

20

117.    The 371-A Report highlights testimony from Dr. Susan Blank of the Department of Hygiene and Mental Health that emphasizes the alleged harms in "delaying" an abortion and emergency contraception, but the 371-A Report does not present the viewpoint that delaying those practices is beneficial. *Id.* at 7.

118.    In discussing the issue of confidentiality, the 371-A Report again relies on the NARAL Report, and then on the testimony of a Planned Parenthood worker who was complaining about an abortion-opposing PRC, regarding the scope of what kind of entities Bill 371-A is responding to and aiming to regulate. *Id.* at 9–1.

119.    In short, every source, mention, discussion, definition, and example of PSCs in the 371-A Report in the "Background" sections discussing what the alleged problems are with PRCs and why Bill 371-A is needed, encompasses only centers that are abortion-opposing while encompassing no centers that are abortion-supporting.

120.    Perfunctory statements of viewpoint neutrality, made *post hoc* by Bill 371-A supporters for fear of it being struck down in court, fail to undermine the universally anti-pro-life aim of Bill 371-A and the Council's continuing endorsement of that aim in the 371-A Report.

121.    Because the information that the City relied upon about alleged problems at PSCs all came from sources that functioned with clear agendas opposed to pro-life centers, and/or had a financial interest in restricting pro-life centers who help women choose not to purchase abortion, the information relied upon by the City is unreliable and lacks credibility as evidence or as a factual basis for the supposed harm caused by the PSCs to give Bill 371-A any real government interest, compelling or otherwise.

<u>Bill 371-A Gives Unbridled Discretion to Compel Speech By Pro-Life Centers</u>

122.    Bill 371-A is written in vague terms in order to allow Defendant Commissioner of the Department of Consumer Affairs (hereinafter the "Commissioner") to further the goals of the 371-A Report by targeting abortion-opposing pregnancy centers with Bill 371-A's mandates and penalties. The text of Bill 371-A is contained on pages 15–25 of Exhibit 1.

123.    Bill 371-A first defines the entities that qualify for its compelled speech and other requirements; then it imposes those regulations; then it authorizes burdensome fines, closure, jail time, and the promulgation of requirements by the Commissioner.

124.    Bill 371-A authorizes the Commissioner to promulgate "any rules necessary for implementing and carrying out the provisions of this local law prior to its effective date," and issues multiple other authorizations for the Commissioner and his Department to create regulations for and enforce the law.  Bill 371-A § 4; § 20-816(f)(1); § 20-818 a & b (1)–(3); § 20-819 a & b.

125.    Bill 371-A proposes to regulate "Pregnancy services center[s]." Bill 371-A § 20-815(g).

126.    The definition of a "pregnancy services center" has several elements, and then two exemptions from the definition. *Id.*

127.    A "pregnancy services center" need not have committed any deception, fraud, false statement, illegal activity, practice of medicine without a license, or any wrongdoing whatsoever, to meet the elements of the "pregnancy services center" definition and therefore to be subject to Bill 371-A's compelled speech and/or penalties.

<u>Vague Elements and "Services" in the Pregnancy Centers Definitions</u>

128.    First, a "pregnancy services center" is a "facility, including a mobile facility." *Id.*

22

129.    Second, a "pregnancy services center" is a facility "the primary purpose of which is to provide services to women who are or may be pregnant." *Id.*

130.    Bill 371-A fails to define "primary purpose."

131.    Bill 371-A fails to define "services."

132.    Depending on the definition of this term, Bill 371-A could also regulate "Babies R Us," maternity stores, and other businesses that sell pregnancy-related items.

133.    The ordinary meaning of the term "services" suggests that "services" in Bill 371-A may include speech, information, and/or education that is helpful to women who are or may be pregnant.

134.    PCCNY, BPCC, and Good Counsel provide helpful speech, information, and/or education to women who are or may be pregnant.

135.    The 371-A Report's focus on the information that PSCs give or do not give to women suggests that "services" in § 20-815(g) does include speech, information, and/or education.

136.    Bill 371-A gives the Commissioner the discretion to determine that "services" in § 20-815(g) includes speech, information, and/or education.

137.    Bill 371-A gives the Commissioner the discretion to determine that "services" in § 20-815(g) includes speech, information, and/or education offered from Plaintiffs' abortion-opposing viewpoint.

138.    Bill 371-A gives the Commissioner the discretion to determine that "services" in § 20-815(g) includes speech, information, and education, offered from an abortion-opposing viewpoint but not an abortion-supporting viewpoint, due to bias against the former.

139.    Bill 371-A gives the Commissioner the discretion to arbitrarily determine that "services" in § 20-815(g) includes or excludes whatever he chooses.

Purely Subjective Element: "Appearance" of Medical Facility

140.    The third element of a "pregnancy services center" in Bill 371-A is that it "either: (1) offers obstetric ultrasounds, obstetric sonograms or prenatal care; or (2) has the appearance of a licensed medical facility." Bill 371-A § 20-815(g).

141.    Although Bill 371-A goes on to list "factors that shall be considered in determining whether a facility has the appearance of a licensed medical facility," Bill 371-A fails to define "the appearance of a licensed medical facility."

142.    Licensed medical facilities in New York City "appear[]" in a wide variety of colors, shapes and sizes.

143.    Bill 371-A gives the Commissioner the discretion to decide what "the appearance of a licensed medical facility" means, as long as he merely "consider[s]" the list of factors.

144.    Bill 371-A does not bind the Commissioner to find that any of the factors regarding "the appearance of a licensed medical facility" in § 20-815(g) are present when he determines that a facility has "the appearance of a licensed medical facility."

145.    A facility can meet none of the factors regarding "the appearance of a licensed medical facility" in § 20-815(g) and still be deemed by the Commissioner as having "the appearance of a licensed medical facility."

146.    Bill 371-A's list of factors regarding "the appearance of a licensed medical facility" is not an exhaustive list.

24

147.    Bill 371-A gives the Commissioner the discretion to decide that a facility "has the appearance of a licensed medical facility" based on factors wholly absent from the list of factors in § 20-815(g).

148.    Bill 371-A gives the Commissioner the discretion to determine that abortion-opposing facilities have "the appearance of a licensed medical facility" due to government bias disfavoring abortion-opposing facilities and favoring abortion-supporting facilities.

149.    Bill 371-A gives the Commissioner the discretion to arbitrarily determine that a facility has "the appearance of a licensed medical facility."

150.    The 371-A Report emphasizes that abortion-opposing pregnancy centers are "deceptive" because of their supposed appearance as a license medical facility, but Bill 371-A's terms are so amorphous that it allows a finding of such "appearance" absent the presence of any deceptive, intentional, or even objective "appearance of a license medical facility."

151.    The factors in § 20-815(g)'s non-exhaustive list are as vague, or more so, as the underlying concept of having the "appearance" of a licensed medical facility, further giving unfettered discretion to the Commissioner to penalize pregnancy centers arbitrarily or because they oppose abortion.

152.    Plaintiffs cannot reasonably determine from Bill 371-A whether they "ha[ve] the appearance of a licensed medical facility."

"Pregnancy Test" Factor Requires Medical Licensing For a Nonmedical Activity

153.    The first factor is that the facility "offers pregnancy testing and/or pregnancy diagnosis." § 20-815(g).

154.    Bill 371-A does not define "offers," "pregnancy testing," or "pregnancy diagnosis."

155.    It is unclear under Bill 371-A whether "offers pregnancy testing" suggests that the offerer is doing the testing, or instead includes situations where the testing is wholly self-administered.

156.    Offering a self-administered pregnancy test as PCCNY and BPCC offer, to be wholly self-administered and self-interpreted by the woman, is not a medical activity, is not the practice of medicine, and does not require a medical license either for the facility or for the participating staff.

157.    It is unclear under Bill 371-A whether offering a self-administered pregnancy test as PCCNY and BPCC offer, to be wholly self-administered and self-interpreted by the woman, contributes to a facility's "appearance [as] a licensed medical facility."

158.    It is unclear under this factor whether the nonmedical offering of a self-administered pregnancy test as PCCNY and BPCC offer might be considered as satisfying this factor that the center "offers pregnancy testing and/or pregnancy diagnosis."

159.    Bill 371-A gives the Commissioner the discretion to determine that the nonmedical offering of a self-administered pregnancy test as PCCNY and BPCC offer qualifies as "offer[ing] pregnancy testing and/or pregnancy diagnosis."

160.    Bill 371-A gives the Commissioner the discretion to determine that the nonmedical offering of a self-administered pregnancy test as PCCNY and BPCC offer qualifies as "offer[ing] pregnancy testing and/or pregnancy diagnosis" even though such offering does not require a medical license.

161.    Bill 371-A gives the Commissioner the discretion to arbitrarily determine that the nonmedical offering of a self-administered pregnancy test as PCCNY and BPCC offer qualifies as "offering pregnancy testing and/or pregnancy diagnosis," or to determine it so qualifies based

26

on to government bias disfavoring abortion-opposing facilities and favoring abortion-supporting facilities.

Nebulous "Attire" and "Uniforms" Factor

162.    The second factor in § 20-815(g)'s non-exhaustive list factors relating to having the "appearance" of a medical facility is that the facility "has staff or volunteers who wear medical attire or uniforms." § 20-815(g).

163.    Bill 371-A does not define "medical attire," nor does it define "uniforms."

164.    Bill 371-A gives the Commissioner the discretion to determine that if staff or volunteers of a facility wear any kind of white shirt, they are wearing "medical attire" that satisfies this factor.

165.    Bill 371-A is unclear whether "uniforms" satisfying this factor need to be "medical" uniforms, or can merely be any "uniforms."

166.    Bill 371-A gives the Commissioner the discretion to determine that nonmedical "uniforms" satisfy this factor.

167.    Bill 371-A gives the Commissioner the discretion to determine that if staff or volunteers of a facility are wearing merely similar-looking clothing they are wearing "uniforms" that satisfy this factor.

168.    Bill 371-A gives the Commissioner the discretion to arbitrarily determine that any kind of clothing is "medical attire" or "uniforms" that satisfies this factor.

169.    Bill 371-A gives the Commissioner the discretion to determine that clothing worn at abortion-opposing facilities is "medical attire" or "uniforms" satisfying this factor due to government bias disfavoring abortion-opposing facilities and favoring abortion-supporting facilities.

27

170.    Staff and volunteers of PCCNY, BPCC, and Good Counsel do not wear "medical attire" while onsite at their facilities.

171.    PCCNY has in the past printed t-shirts with its logo on it to promote PCCNY and its services.

172.    Although PCCNY does not coordinate the wearing of such t-shirts, on any given day one or more PCCNY staff or volunteers may be wearing a t-shirt with PCCNY's logo on it while onsite.

173.    Bill 371-A gives the Commissioner the discretion to determine that PCCNY staff or volunteers wearing a t-shirt with PCCNY's logo on it qualifies as "wear[ing] . . . uniforms" satisfying this factor.

174.    Bill 371-A does not specify when or where staff or volunteers of facilities need to be when they are determined to be "wear[ing] medical attire or uniforms" satisfying this factor.

175.    To the extent that some staff or volunteers of PCCNY, BPCC, or Good Counsel may now or in the future be medical personnel and wear medical attire in their outside jobs away from the facilities of PCCNY, BPCC or Good Counsel, Bill 371-A gives the Commissioner discretion to determine that this factor is satisfied merely by the fact that such staff or volunteers wear medical attire on their own, outside PCCNY, BPCC or Good Counsel.

Undefined "Examination Tables" Factor

176.    The third factor in § 20-815(g)'s non-exhaustive list of factors relating to having the "appearance" of a medical facility is that the facility "contains one or more examination tables." § 20-815(g).

177.    Bill 371-A does not define "examination" or "table[]."

28

178.    Bill 371-A gives the Commissioner the discretion to determine that tables at abortion-opposing facilities are "examination tables" satisfying this factor due to government bias disfavoring abortion-opposing facilities and favoring abortion-supporting facilities.

179.    Bill 371-A gives the Commissioner the discretion to determine that a couch on which women might sit when receiving nonmedical counseling is an "examination table[]" satisfying this factor.

180.    Bill 371-A gives the Commissioner the discretion to arbitrarily determine that any kind of table is an "examination table[]" satisfying this factor.

### Limitless "Private Room" Factor Applies to All Areas and Health Products

181.    The fourth factor in § 20-815(g)'s non-exhaustive list factors relating to having the "appearance" of a medical facility is that the facility "contains a private or semi-private room or area containing medical supplies and/or medical instruments." § 20-815(g).

182.    Bill 371-A does not define "private," "semi-private," "area," "medical supplies," or "medical instruments."

183.    Bill 371-A gives the Commissioner the discretion to determine that a bathroom or an office is a "private" or "semi-private" room.

184.    Bill 371-A gives the Commissioner the discretion to determine that a room is a "private" or "semi-private" room due to government bias disfavoring abortion-opposing facilities and favoring abortion-supporting facilities.

185.    Bill 371-A gives the Commissioner the discretion to arbitrarily determine that any room is a "private" or "semi-private" room.

186.    Bill 371-A gives the Commissioner the discretion to determine that a drawer or a cabinet is a "private" or "semi-private" "area."

29

187.    Bill 371-A gives the Commissioner the discretion to determine that ordinary health items like a first-aid kit, Tylenol, or band-aids are "medical supplies."

188.    Bill 371-A gives the Commissioner the discretion to determine that any facility that has a drawer with a first aid kit in it, or a bathroom with Tylenol or band-aids in the medicine cabinet, even if for staff only, "contains a private or semi-private room or area containing medical supplies and/or medical instruments."

189.    Bill 371-A gives the Commissioner the discretion to determine that self-administered pregnancy tests are "medical supplies" under this factor.

190.    Bill 371-A gives the Commissioner the discretion to determine that diapers or diaper rash ointment are "medical supplies" under this factor.

191.    Bill 371-A gives the Commissioner the discretion to determine that packaged baby thermometers or bulb nasal aspirators to be donated for free to pregnant women are "medical instruments" under this factor.

192.    Bill 371-A gives the Commissioner the discretion to determine that a facility "contains a private or semi-private room or area containing medical supplies and/or medical instruments" based on bias that may exist disfavoring abortion-opposing facilities and favoring abortion-supporting facilities.

193.    It is not clear whether this factor could, alternatively, be interpreted as meaning a facility that either (1) contains a private or semi-private room, or (2) [contains] an area containing medical supplies and/or medical instruments.

194.    PCCNY and BPCC possess manufacturer-packaged self-administered pregnancy tests as described above.

195.    If PCCNY and BPCC left their self-administered pregnancy test kits out in the open instead of in a box or a drawer, they would more so, not less so, "ha[ve] the appearance of a licensed medical facility."

196.    But if PCCNY and BPCC store their self-administered pregnancy tests in a box in the bathroom or in a drawer, Bill 371-A gives the Commissioner the discretion to determine PCCNY and BPCC for that reason alone are facilities that "contain[] a private or semi-private room or area containing medical supplies and/or medical instruments."

197.    Bill 371-A gives the Commissioner the discretion to determine that no matter how or where PCCNY and BPCC store their self-administered pregnancy tests, the storage makes them facilities that "contain[] a private or semi-private room or area containing medical supplies and/or medical instruments."

198.    PCCNY, BPCC, and Good Counsel all have first aid kits on premises. Those kits are themselves a box or bag that closes, and that contains supplies.

199.    It would be unsafe for PCCNY, BPCC, and Good Counsel not to have first aid kits on premises.

200.    Bill 371-A gives the Commissioner the discretion to determine that no matter where or how PCCNY, BPCC, and Good Counsel store their first aid kits, their existence and storage in those facilities makes them facilities that "contain[] a private or semi-private room or area containing medical supplies and/or medical instruments."

201.    PCCNY, BPCC, and Good Counsel all have bathrooms with medicine cabinets sometimes containing a minimal amount of items such as Tylenol or band-aids for the use of staff and volunteers.

31

202.    Bill 371-A gives the Commissioner the discretion to determine that merely if PCCNY, BPCC, and Good Counsel have bathrooms with medicine cabinets sometimes containing a minimal amount of items such as Tylenol or band-aids for the use of staff and volunteers, they are facilities that "contain[] a private or semi-private room or area containing medical supplies and/or medical instruments."

203.    Good Counsel homes are actual homes, where pregnant women, their children, and a resident assistant live—full-time—for months at a time, before and after birth.

204.    As such, Good Counsel homes have, somewhere in those homes, medicines and first aid items for the variety of persons living therein.

205.    In addition, sometimes Good Counsel homes care for women who are taking prescription medication because of mental health challenges. Good Counsel keeps such medication in a locked cabinet. It would be unsafe and harmful to the women for Good Counsel not to make sure these women take their medication as prescribed, and likewise for Good Counsel not to store their medication securely, or to leave it in a non-private area.

206.    Bill 371-A gives the Commissioner the discretion to determine that because Good Counsel homes contain, somewhere, medicines for the persons living therein, they are facilities that "contain[] a private or semi-private room or area containing medical supplies and/or medical instruments."

207.    Bill 371-A gives the Commissioner the discretion to determine that practically any place anyone lives is a facility that "contains a private or semi-private room or area containing medical supplies and/or medical instruments."

32

<u>"Health Insurance" Factor Unrelated to "Appearance" Threatens Maternity Homes</u>

208.    The fifth factor in § 20-815(g)'s non-exhaustive list factors relating to having the "appearance" of a medical facility is that the facility "has staff or volunteers who collect health insurance information from clients."  § 20-815(g).

209.    Bill 371-A does not define "collect" or "health insurance information."

210.    Bill 371-A gives the Commissioner the discretion to determine that if staff or volunteers of a pregnancy center merely ask a client the question "Do you have health insurance?" so as to refer them to PCAP, this constitutes "collect[ing] health insurance information from clients."

211.    Bill 371-A gives the Commissioner the discretion to determine that particular information shall constitute "health insurance information" due to government bias disfavoring abortion-opposing facilities and favoring abortion-supporting facilities.

212.    Bill 371-A gives the Commissioner the discretion to arbitrarily determine that particular information shall constitute "health insurance information."

213.    PCCNY and BPCC do not solicit information from clients in writing about their health insurance, and do not solicit information from clients orally about their health insurance with the exception of occasionally asking whether women have health insurance or not in the course of helping refer women who need medical referrals.  If clients do not have health insurance, and seek assistance in that regard, PCCNY and BPCC do nothing in relation to their health insurance status except refer them to PCAP or to a local medical clinic or hospital that can connect them with PCAP.

214.    Bill 371-A gives the Commissioner the discretion to unfairly decide that PCCNY or BPCC "have staff or volunteers who collect health insurance information from clients," in

33

support of a determination that PCCNY or BPCC have the "appearance of a licensed medical facility."

215.    Good Counsel homes, as mentioned, are actual homes where pregnant and recently delivered women live full-time. Good Counsel homes' staff, as a result of nonmedically serving all the needs of the women in their homes, help those women schedule and secure the medical assistance they need for themselves and their children from outside medical providers. Therefore, Good Counsel homes' staff do collect, and protect, actual health insurance information from the women in their homes, with those women's full consent, to help arrange their appointments.

216.    Bill 371-A gives the Commissioner the discretion to unfairly decide that Good Counsel homes "have staff or volunteers who collect health insurance information from clients," in support of a determination that Good Counsel homes have the "appearance of a licensed medical facility."

"Premises" Factor Can Be Triggered by Unrelated Doctors' Offices

217.    The sixth factor in § 20-815(g)'s non-exhaustive list factors relating to having the "appearance" of a medical facility is that the facility "is located on the same premises as a licensed medical facility or provider or shares facility space with a licensed medical provider." § 20-815(g).

218.    Bill 371-A defines "premises" as "land and improvements or appurtenances or any part thereof." *Id.*

219.    Bill 371-A does not define "facility space."

220.    Bill 371-A gives the Commissioner the discretion to determine that if a pregnancy center is on Floor 49 of a 50-story building, and a doctor moves into Floor 3 with no connection

34

to or consent of the pregnancy center, the pregnancy center nevertheless "is located on the same premises as a licensed medical facility or provider or shares facility space with a licensed medical provider."

221.    Bill 371-A gives the Commissioner the discretion to determine a pregnancy center "is located on the same premises as a licensed medical facility or provider or shares facility space with a licensed medical provider" due to government bias disfavoring abortion-opposing facilities and favoring abortion-supporting facilities.

222.    PCCNY and BPCC rent or lease space in buildings that can house other tenants.

### None of Those Factors Need Be Present, But Two Vague Factors Are Enough

223.    After listing its six non-exhaustive factors relating to having the "appearance" of a medical facility, Bill 371-A declares that "It shall be prima facie evidence that a facility has the appearance of a licensed medical facility if it has two or more of the factors listed in subparagraphs (a) through (f) of paragraph (2) of this subdivision."

224.    Therefore if any two of the vague, ambiguous, indeterminate, biased or arbitrary determinations described above are deemed present by the Commissioner's unfettered discretion, a facility is prima facie deemed to "ha[ve] the appearance of a licensed medical facility."

225.    Bill 371-A does not require a minimum of two factors, or even one factor, being satisfied before the Commissioner may determine that a facility "has the appearance of a licensed medical facility."

226.    Bill 371-A does not give PCCNY, BPCC, or Good Counsel any clear way to determine in advance how to avoid being deemed by the Commissioner as being a pregnancy services center having the appearance of a licensed medical facility.

35

227.    Plaintiffs cannot reasonably determine from the "appearance" factors listed in Bill 371-A, or from unnamed factors the Commissioner may rely on, whether they "ha[ve] the appearance of a licensed medical facility."

Undefined Exceptions to Favor Abortion Providers

228.    Bill 371-A next describes two exceptions to the definition of "pregnancy services center," under which even a facility deemed to be a PSC by the above "definition" will be considered as not being a PSC.  § 20-815(g).

229.    Under the first exception, "[a] pregnancy services center shall not include a facility that is licensed by the state of New York or the United States government to provide medical or pharmaceutical services." *Id.*

230.    Under the second exception, "[a] pregnancy services center shall not include a facility . . . where a licensed medical provider is present to directly provide or directly supervise the provision of all services described in this subdivision that are provided at the facility." *Id.*

231.    Bill 371-A does not define "directly," "supervise," or "services."

232.    It is unclear whether "directly supervise" is coextensive with, or different than, the meaning of "supervise" under New York law or regulation regarding the circumstances under which a licensed medical provider may supervise the provision of medical services.

233.    Bill 371-A gives the Commissioner discretion to determine that even if a pregnancy center offers medical services and all those medical services are provided or supervised by a licensed medical provider in accordance with New York law, they are still not "directly" provided or supervised under Bill 371-A.

234.    Bill 371-A gives the Commissioner discretion to determine that services at a pregnancy center are not "directly" provided or supervised under Bill 371-A due to government bias disfavoring abortion-opposing facilities and favoring abortion-supporting facilities.

235.    Bill 371-A gives the Commissioner discretion to arbitrarily determine whether services at a pregnancy center are "directly" provided or supervised according to Bill 371-A.

236.    These two exemptions are blanket exemptions for any abortion-providing or emergency contraception providing facility, since the provision of abortion or emergency contraception must be performed by licensed medical providers.

237.    Bill 371-A and its anti-pro-life history risks that the Commissioner may enforce the law by determining that all abortion- or emergency-contraception-providing facilities fall under these exemptions, even if they are not licensed medical facilities and if many of the services they provide for pregnant women are not "directly" provided or "supervised" by a licensed medical provider, while at the same time holding abortion-opposing facilities to a more stringent standard of "direct" providing and "supervising" of all their services for pregnant women even if few or none of those services are medical activities.

238.    New York state law and regulation requiring that certain services be supervised by licensed medical providers applies such supervision only to medical services, and not to nonmedical services.

239.    It is incoherent under New York state law and regulation of licensed medical providers to speak of such providers "supervising" activities in their role as medical providers when such activities are not medical activities.

240.    Bill 371-A gives the Commissioner discretion to require that nonmedical services must be "directly supervised" by a licensed medical provider to meet this second exception to the PSC definition.

241.    Bill 371-A gives the Commissioner discretion to require that nonmedical speech to pregnant women on the issue of abortion must be "directly supervised" by a licensed medical provider to meet this second exception to the PSC definition.

242.    Bill 371-A gives the Commissioner discretion to require that the distribution of diapers to pregnant women must be "directly supervised" by a licensed medical provider to meet this second exception to the PSC definition.

243.    Bill 371-A gives the Commissioner discretion to deem a facility to be a "pregnancy services center," by its meeting of the initial definition of PSC including the "appearance of a licensed medical facility" factors test, and by its failure to meet either of the two exceptions including because it is not "licensed by the state of New York or the United States government to provide medical or pharmaceutical services," even though such a facility engages in no practice by which the laws of the state of New York or the United States would require that the facility be licensed as a medical or pharmaceutical facility, and even though such a facility is engaged in no fraud portraying itself as a licensed medical or pharmaceutical facility.

244.    In this way, Bill 371-A exceeds New York Municipal Home Rule Law § 10 by attempting to impose medical facility licensing requirements in excess of New York law that preempts the field regarding what facilities need to have a medical license, because Bill 371-A imposes a penalty on a facility for its failure to be licensed by the state of New York to provide medical services, when in fact the laws of the state of New York do not require the facility to be licensed to provide medical services.

38

245.    Bill 371-A gives the Commissioner discretion to deem a facility to be a "pregnancy services center," by its meeting of the initial definition of PSC including the "appearance of a licensed medical facility" factors test, and by its failure to meet either of the two exceptions including because it is not "a facility . . . where a licensed medical provider is present to directly provide or directly supervise the provision of all services described in this subdivision that are provided at the facility," even though such a facility engages in no practice that the laws of the state of New York would require to be provided or supervised by a licensed medical provider, and even though such a facility is engaged in no fraud portraying itself as engaging in practices that must be provided or supervised by a licensed medical provider.

246.    In this way, Bill 371-A exceeds New York Municipal Home Rule Law § 10 by attempting to impose on a facility requirements on (1) what activities constitute the practice of medicine, (2) what activities can only be provided by licensed medical providers, (3) what activities must be supervised by a licensed medical provider, (4) what level of supervision is required for such activities, and (5) whether "licensed medical" supervision is even cognizable for such activities, all in excess of New York law that preempts the field regarding these issues, because Bill 371-A imposes a penalty on a facility for its failure to have its activities directly provided or supervised by a licensed medical provider even though the laws of the state of New York do not require those activities to be directly provided or supervised by a licensed medical provider, and even though such a facility is engaged in no fraud portraying itself as engaging in practices that must be provided or supervised by a licensed medical provider.

247.    PCCNY, BPCC, and Good Counsel offer no medical services, and yet to meet the exemptions to Bill 371-A's PSC definition they would either need to become licensed medical

39

facilities or have licensed medical providers "directly" provide or "supervise" their nonmedical services to pregnant women.

248.   It is not possible for PCCNY, BPCC, and Good Counsel to become licensed medical facilities in accordance with this exemption because they offer no medical, hospital, diagnostic, or clinical laboratory services, and licensing of medical facilities under New York Public Health Law §2800, et seq., is only applicable to facilities who offer such services.

249.   It is not possible for PCCNY, BPCC, and Good Counsel to become licensed medical facilities or have licensed medical providers directly provide or supervise their services to pregnant women in accordance with this exemption, since doing so would be cost-prohibitive and would involve approval requirements by the state of New York that are unduly burdensome to PCCNY, BPCC, and Good Counsel since they are facilities that offer no medical, hospital, diagnostic, or clinical laboratory services.

250.   It is not possible for PCCNY, BPCC, and Good Counsel to have licensed medical providers directly provide or supervise their services to pregnant women in accordance with this exemption, because none of their services are medical and it is not possible for a licensed medical provider in his or role as a licensed medical provider to supervise nonmedical activities.

251.   Even if PCCNY, BPCC, and Good Counsel could attempt to have licensed medical providers directly provide or supervise their services to pregnant women in accordance with this exemption, they have no reasonable way to determine how to comply by meeting the exemption, because Bill 371-A gives them no clear way to determine what "services" count as requiring supervision, what it would mean for their providers to "supervise" such services, and how "direct" the supervision would have to be.

252.    Bill 371-A gives PCCNY, BPCC, and Good Counsel no clear way to determine in advance whether they are "pregnancy services centers" subject to the Bill's requirements.

Compelled Speech

253.    Bill 371-A requires that a "pregnancy services center," as defined by the Commissioner, "shall disclose":

- "to a client that the New York City Department of Health and Mental Hygiene encourages women who are or who may be pregnant to consult with a licensed medical provider";

- "if it does or does not have a licensed medical provider on staff who provides or directly supervises the provision of all of the services at such pregnancy services center";

- "if it does or does not provide or provide referrals for abortion";

- "if it does or does not provide or provide referrals for emergency contraception"; and,

- "if it does or does not provide or provide referrals for prenatal care";

§ 20-816 a–e.

254.    In addition, "The disclosures required by this section must be provided":

- "in writing, in English and Spanish in a size and style as determined in accordance with rules promulgated by the commissioner";

- "on at least one sign conspicuously posted in the entrance of the pregnancy services center";

- on "at least one additional sign posted in any area where clients wait to receive services";

- "in any advertisement promoting the services of such pregnancy services center in clear and prominent letter type and in a size and style to be determined in accordance with rules promulgated by the commissioner; and"

- "orally, whether by in person or telephone communication, upon a client or prospective client request for any of the following services: (i) abortion; (ii) emergency contraception; or (iii) prenatal care."

41

§ 20-816 f.

255.    The disclosures required in Bill 371-A § 20-816 are compelled speech.

256.    The disclosures required in Bill 371-A § 20-816 force PCCNY, BPCC, and Good Counsel to speak messages dictated by the government and written by Defendants.

257.    The disclosures required in Bill 371-A § 20-816 would force PCCNY, BPCC, and Good Counsel to state that they do not provide the services that the City of New York believes are necessary for their clients.

258.    The disclosures required in Bill 371-A § 20-816 would force PCCNY, BPCC, and Good Counsel to suggest that they are not qualified to discuss pregnancy options or to provide help to pregnant women.

259.    By requiring PSCs to disclose "orally, whether by in person or telephone communication, upon a client or prospective client request for . . . abortion [or] emergency contraception," Bill 371-A is regulating the speech of a PSC in response to questions about abortion and emergency contraception.

260.    Bill 371-A does not require abortion-supporting PSCs to disclose whether they refer women to abortion-opposing PSCs.

261.    Bill 371-A does not require PSCs to disclose whether they refer for adoptions, or whether they provide free material assistance for women to choose alternatives for abortion.

262.    Bill 371-A does not require abortion-supporting facilities to disclose how many abortions they provide or refer for versus how many clients they provide for or refer for to choose abortion alternatives.

263.    Bill 371-A does not require abortion-providing facilities to disclose whether they have a financial interest in the woman's choice of abortion.

264.    Bill 371-A does not require abortion-supporting facilities to disclose whether they consider preborn children to be human beings who deserve loving care rather than abortion.

265.    Bill 371-A does not require Planned Parenthood to disclose whether it has the primary purpose of providing parenthood.

266.    The purpose and effect of Bill 371-A's disclosures is to require abortion-opposing PSCs to discuss abortion and emergency contraception, while not requiring abortion-supporting facilities to discuss abortion alternatives or their financial motives.

267.    Among the universe of medical and nonmedical services that pregnant women can receive, Bill 371-A singles out abortion and emergency contraception in a small list of matters that must be treated in discussions with pregnant women, while not including many other matters such as abortion alternatives.

268.    Bill 371-A privileges and gives prominence to abortion and contraception in the speech of PSCs more so than to options and services omitted from Bill 371-A's list of disclosures, in particular abortion alternatives.

269.    PCCNY, BPCC and Good Counsel offer their services to women from the viewpoint that believes that the lives of women and their preborn children share the same rather than opposing interests, and that preborn children from the moment of conception are human beings deserving equal recognition and loving care alongside the mother.

270.    Therefore PCCNY, BPCC and Good Counsel's viewpoints morally exclude the idea that abortion and emergency contraception are necessarily legitimate and standard options for pregnant women, and that abortion and emergency contraception are privileged in such a way that if a center does not engage in or refer for them, their rendering of services should be remediated by prominent disclosures mentioning those items.

271.    Bill 371-A (in agreement with the 371-A Report) imposes a contrary viewpoint on all PSC discussions with pregnant women: namely, that if abortion and emergency contraception are not provided or referred for, a PSC is to that extent engaging in a practice that is substandard for pregnant women, and must remediate their practice by mandated disclosures that emphasize abortion and emergency contraception.

272.    By singling out abortion and emergency contraception in its small list of items that PCCNY, BPCC and Good Counsel must speak about to pregnant women or risk being penalized or sued as PSCs, Bill 371-A is forcing PCCNY, BPCC and Good Counsel to speak about pregnancy in violation of their viewpoint that abortion and emergency contraception are not necessarily legitimate and standard options for pregnant women and should not be privileged in such a way that if a center does not engage in or refer for abortion and emergency contraception their rendering of services must be remediated by prominent disclosures mentioning those items.

273.    Bill 371-A § 20-816 declares that speech in the form of "any advertisement" of a PSC must also include messages dictated by the government and written by the Commissioner.

274.    In imposing disclosures on "any advertisement" of a PSC, Bill 371-A § 20-816 is a direct regulation of speech.

275.    Bill 371-A does not define "advertisement."

276.    Bill 371-A would impose a significant financial burden on PCCNY, BPCC, and Good Counsel in their advertisement in the newspaper or billboards, due to the increased amount of space the centers would need to purchase to include the required disclosures.

277.    Bill 371-A may impose a significant financial burden on PCCNY, BPCC, and Good Counsel by forcing them to change the external signage on their facilities since Bill 371-A

44

gives the Commissioner discretion to consider any signs with the name of their facility on it to be separate "advertisements."

278. Bill 371-A imposes a significant financial burden on PCCNY, BPCC, and Good Counsel by forcing them to purchase extra ad space in the Yellow Pages, since all of them are listed in the Yellow Pages, but none of them pay for that listing or any expanded listing, yet Bill 371-A gives the Commissioner discretion to consider their mere listings to be "advertisements" for which they must pay to add disclosures by affirmatively purchasing larger entries big enough to hold the Commissioner's disclaimers.

279. Bill 371-A gives the Commissioner the discretion to determine that "any advertisement" to which the Commissioner's disclosures must be attached includes a PSC's website.

280. Bill 371-A gives the Commissioner the discretion to determine that "any advertisement" to which the Commissioner's disclosures must be attached includes letters that a PSC sends to supporters asking for support.

281. Bill 371-A gives the Commissioner the discretion to determine that "any advertisement" to which the Commissioner's disclosures must be attached includes a PSC's letterhead and stationery.

282. Bill 371-A gives the Commissioner the discretion to determine that "any advertisement" to which the Commissioner's disclosures must be attached includes any item that a PSC prints with its name on it and that it shares with someone else.

283. Bill 371-A gives the Commissioner the discretion to determine that "any advertisement" to which the Commissioner's disclosures must be attached includes advertisements of a PSC performed by a third party speaker, at no cost to the PSC.

45

284.    Bill 371-A also gives the Commissioner the discretion to penalize a PSC or a third party speaker for third party advertisements promoting a PSC, made at no cost to the PSC, but that do not include § 20-816's required disclosures.

285.    Extending § 20-816's required disclosures to a third party's free advertisements of a PSC would violate the third party's right to freedom of speech.

286.    Penalizing a PSC for a third party's free advertisements of a PSC would violate the rights of the PSC since it cannot impose § 20-816's required disclosures on the third party, and since if the PSC was forced to impose such disclosures it would be causing speech that it does not wish to cause.

287.    If PCCNY, BPCC, and Good Counsel are "pregnancy services centers," Bill 371-A still does not give them any clear way to determine in advance what forms of speech are "advertisements" to which disclosures required by § 20-816 must be attached so that they may avoid Bill 371-A's imposed penalties.

288.    Although Bill 371-A may force PCCNY, BPCC, and Good Counsel to disclose "if [they do or do] not have a licensed medical provider on staff who provides or directly supervises the provision of all of the services at such pregnancy services center," yet even if they did obtain a licensed medical provider on staff they could still not disclose such a fact because they would still have no clear way of knowing what it means for a licensed medical provider to provide or "directly" "supervise" the provision of all of their "services."

Draconian Penalties Imposed on PSCs

289.    Bill 371-A declares that any "pregnancy services center" that fails to follow § 20-816's required disclosures is subject to a variety of fines and other penalties.

290.    Any PSC that fails to follow § 20-816's required disclosures "shall be liable for a civil penalty of not less than two hundred dollars nor more than one thousand dollars for the first violation and a civil penalty of not less than five hundred dollars nor more than two thousand-five hundred dollars for each succeeding violation." § 20-818a.

291.    No warning or notice of noncompliance is required before a PSC can be subject to the fines in § 20-818a.

292.    No warning or notice by the Commissioner that he considers the PSC to be a PSC that must follow Bill 371-A is required before a PSC can be subject to the fines in § 20-818a.

293.    Section 20-818a likewise imposes its monetary fines for a PSC's failure to follow "any rules or regulations promulgated" by the commissioner under § 20-816.

294.    Section 20-818a gives the Commissioner the discretion to add additional requirements that subject PSCs to its unwarned financial penalties.

295.    Section 20-818b(1) authorizes the Commissioner to "order that the pregnancy services center be sealed for a period not to exceed five consecutive days" if the center "is found to have violated the provisions of section 20-816 on three or more separate occasions within two years."

296.    Although Section 20-818c defines "violation" as "all violations committed on any one day by any one" PSC, Bill 371-A does not define "separate occasions."

297.    Section 20-818a gives the Commissioner the discretion to wait until a center that doesn't know it is a PSC engages in three or more violations of § 20-816, of the same kind and as a continual practice though on three or more separate days, and then without warning impose the fines and closure all at once, after notice and a hearing.

47

298.   Section 20-818b(2) declares that orders of the Commissioner to close a PSC "shall be posted at the premises that are the subject of the order."

299.   Section 20-818b(5) declares that "[m]utilation or removal of a posted order of the commissioner or his designee shall be punishable by a fine of not more than two hundred fifty dollars or by imprisonment not exceeding fifteen days, or both, provided such order contains therein a notice of such penalty."

300.   Section 20-818b(1)–(5) constitutes compelled speech by the PSC of the message on the Commissioner's order posted on the PSC.

301.   Section 20-818b(5) further declares that "[a]ny other intentional disobedience or resistance to any provision of" a closure order under 20-818b(1), including using or occupying or permitting any other person to use or occupy any premises ordered closed without the permission of the department as described in subdivision b shall, in addition to any other punishment prescribed by law, be punishable by a fine of not more than one thousand dollars, or by imprisonment not exceeding six months, or both."

302.   A closure of a PSC pursuant to Section 20-818b would constitute a taking by the City.

303.   Section 20-819 then declares that "Notwithstanding any other provision of law, the department shall be authorized, upon due notice and hearing, to impose civil penalties for the violation of the provisions of this subchapter and any rules promulgated thereunder."

304.   Section 20-819 gives the Commissioner the discretion to add additional requirements that subject PSCs to financial and other penalties.

305.   The existence of Bill 371-A imposes an impermissible chill on the speech and viewpoint-based services offered by PCCNY, BPCC, and Good Counsel.

48

306.    Bill 371-A's existence and enforcement by the Commissioner will irreparably harm PCCNY, BPCC, and Good Counsel by infringing upon their First Amendment and Fourteenth Amendment rights to free speech and due process, and their free speech and due process rights under the New York Constitution, and their right to be free of laws enacted in violation of New York Municipal Home Rule Law, New York City Administrative Code, and New York City Charter.

307.    The unconstitutional and illegal provisions of Bill 371-A are not severable from the law's other provisions because they are essential to the definition of "pregnancy services centers" which definition triggers all the law's impositions, the disclosures are essential to the scope of the law, and all provisions are integral to the function of the law as written.

308.    Defendant is a "person" for purposes of the claims set forth in this complaint, as that term is used in 42 U.S.C. § 1983.

309.    The challenged Bill 371-A is the policy of the City of New York, officially adopted and promulgated for the City of New York by its legislative body, the City Council of New York, and signed into law by its chief executive, the Mayor of New York.

310.    All of the conduct of Defendants as set forth in this complaint, whether taken or threatened to be taken, constitutes conduct "under color of state law" as that phrase is used in 42 U.S.C. § 1983.

311.    PCCNY, BPCC, and Good Counsel have no adequate remedy at law.

## FIRST CAUSE OF ACTION:
## COMPELLED SPEECH
## IN VIOLATION OF THE FIRST AMENDMENT
## OF THE UNITED STATES CONSTITUTION
## AND ARTICLE I, § 8 OF THE NEW YORK CONSTITUTION

312.    The allegations of the paragraphs above are reasserted here.

313.    The First Amendment to the United States Constitution protects the freedom of speech and the press, including protecting private noncommercial entities from being compelled to engage in speech by the government.

314.    Article I, § 8 of the New York Constitution protects the freedoms of expression and the press to an even greater degree than does the First Amendment of the U.S. Constitution.

315.    PCCNY, BPCC and Good Counsel engage in the kinds of pregnancy-related speech and viewpoint-motivated activities that the Commissioner is likely to use his discretion under Bill 371-A to regulate.

316.    By compelling pregnancy services centers to engage in disclosures of information, including orally, in writing, on signs and advertisements, and in the form and content written by the Commissioner, Bill 371-A unconstitutionally compels speech.

317.    Being forced to engage in Bill 371-A's compelled disclosures would force PCCNY, BPCC and Good Counsel to speak a message in a mandated form, content and context with which they disagree and which is inconsistent with the manner in which they desire to provide information and viewpoint-motivated assistance.

318.    Bill 371-A imposes an unconstitutional prior restraint on speech by requiring that before PCCNY, BPCC and Good Counsel offer their informational assistance regarding pregnancy and their viewpoint-motivated assistance on the issue of pregnancy, they must comply with various disclosures, and by providing for closure of their centers by order of Defendants until such disclosures are posted.

319.    PCCNY, BPCC and Good Counsel are unconstitutionally chilled in their exercise of speech and viewpoint-motivated activity regarding pregnancy because of the compelled disclosures or, in the alternative, penalties that Bill 371-A gives the Commissioner the discretion

50

to impose on them, and without declaratory and injunctive relief they will continue to be so chilled.

320.    Defendants have no compelling interest in furtherance of Bill 371-A's compelled speech.

321.    Bill 371-A's compelled speech is not narrowly tailored to serve such an interest.

322.    Bill 371-A's existence and enforcement by the Commissioner will irreparably harm PCCNY, BPCC, and Good Counsel by infringing upon their right to free speech, expression and the press.

323.    PCCNY, BPCC and Good Counsel have no adequate remedy at law.

### SECOND CAUSE OF ACTION:
### CONTENT DISCRIMINATION
### IN VIOLATION OF THE FIRST AMENDMENT
### OF THE UNITED STATES CONSTITUTION
### AND ARTICLE I, § 8 OF THE NEW YORK CONSTITUTION

324.    The allegations of the paragraphs above are reasserted here.

325.    The First Amendment to the United States Constitution protects the freedom of speech against laws that regulate speech based on its content, and considers such laws presumptively unconstitutional.

326.    Article I, § 8 of the New York Constitution protects the freedom of speech and expression to an even greater degree than does the First Amendment of the U.S. Constitution.

327.    Bill 371-A unconstitutionally imposes a content-based restriction on the speech of PCCNY, BPCC and Good Counsel by mandating certain content in their speech through required written and oral disclosures about the specific topics of pregnancy, abortion, emergency contraception, licensing, and prenatal care.

51

328.    Bill 371-A unconstitutionally imposes a content-based restriction on the speech of PCCNY, BPCC and Good Counsel by singling out their informational assistance regarding pregnancy and their viewpoint-motivated assistance on the issue of pregnancy for special regulations based on the fact that their efforts concern the topic of pregnancy.

329.    Bill 371-A unconstitutionally imposes a content-based restriction on the speech of PCCNY, BPCC and Good Counsel by mandating only disclosures calling attention to a select list of matters including abortion and emergency contraception but not also requiring such specific disclosures about a variety of abortion alternatives and the life of the unborn child.

330.    Bill 371-A is unconstitutionally underinclusive.

331.    Defendants have no compelling interest in furtherance of Bill 371-A's content-based speech regulations.

332.    Bill 371-A's content-based speech regulations are not narrowly tailored to serve such an interest.

333.    PCCNY, BPCC and Good Counsel are unconstitutionally burdened and chilled in their exercise of speech and viewpoint-motivated activity regarding pregnancy because of Bill 371-A's content-based regulation, and they will continue to be so burdened and chilled without declaratory and injunctive relief.

334.    Bill 371-A's existence and enforcement by the Commissioner will irreparably harm PCCNY, BPCC, and Good Counsel by infringing upon their right to free speech and expression.

335.    PCCNY, BPCC and Good Counsel have no adequate remedy at law.

52

### THIRD CAUSE OF ACTION:
### VIEWPOINT DISCRIMINATION
### IN VIOLATION OF THE FIRST AMENDMENT
### OF THE UNITED STATES CONSTITUTION
### AND ARTICLE I, § 8 OF THE NEW YORK CONSTITUTION

336.    The allegations of the paragraphs above are reasserted here.

337.    The First Amendment to the United States Constitution protects the freedom of speech against laws that regulate speech based on its viewpoint or have the purpose or effect of disfavoring some viewpoints.

338.    Article I, § 8 of the New York Constitution protects the freedom of speech and expression to an even greater degree than does the First Amendment of the U.S. Constitution.

339.    Bill 371-A unconstitutionally discriminates against the speech of PCCNY, BPCC and Good Counsel because of its viewpoint that abortion and emergency contraception do not possess the kind of privilege, prominence or legitimacy among pregnancy options that should be highlighted by the form and content of disclosures crafted by the Commissioner.

340.    Bill 371-A unconstitutionally discriminates against the viewpoint of PCCNY, BPCC and Good Counsel because the bill compels only disclosures calling attention to a select list of matters including abortion and emergency contraception but not also requiring such specific disclosures about a variety of abortion alternatives and the life of the unborn child, thus favoring the listed matters over the unlisted ones.

341.    The 371-A Report makes it clear that "pregnancy services centers" applies, as a category, to facilities that oppose abortion and not to facilities that support abortion.

342.    Bill 371-A intends for the Commissioner to interpret and enforce Bill 371-A consistent with the 371-A Report's exclusive focus on "pregnancy services centers" as abortion-opposing centers and not as facilities that support abortion.

53

343.    Bill 371-A unconstitutionally discriminates against the speech of PCCNY, BPCC and Good Counsel because it has the purpose and effect of regulating their informational assistance regarding pregnancy and their viewpoint-motivated assistance on the issue of pregnancy, based on government bias against facilities with abortion-opposing viewpoints and in favor of facilities with abortion-supporting viewpoints.

344.    Bill 371-A unconstitutionally discriminates against the speech of PCCNY, BPCC and Good Counsel because it is intended and will be enforced to regulate only facilities with abortion-opposing viewpoints not facilities with abortion-supporting viewpoints.

345.    Defendants have no compelling interest in furtherance of Bill 371-A's viewpoint-based speech regulations.

346.    Bill 371-A's viewpoint-based speech regulations are not narrowly tailored to serve such an interest.

347.    PCCNY, BPCC and Good Counsel are unconstitutionally burdened and chilled in their exercise of speech and viewpoint-motivated activity regarding pregnancy because of Bill 371-A's viewpoint-based regulation, and they will continue to be so burdened and chilled without declaratory and injunctive relief.

348.    Bill 371-A's existence and enforcement by the Commissioner will irreparably harm PCCNY, BPCC, and Good Counsel by infringing upon their right to free speech and expression.

349.    PCCNY, BPCC and Good Counsel have no adequate remedy at law.

54

**FOURTH CAUSE OF ACTION:**
**VAGUENESS**
**IN VIOLATION OF THE FOURTEENTH AMENDMENT**
**OF THE UNITED STATES CONSTITUTION**
**AND ARTICLE I, § 6 OF THE NEW YORK CONSTITUTION**

350.    The allegations of the paragraphs above are reasserted here.

351.    The Fourteenth Amendment to the United States Constitution right to due process protects against the government's imposition of penalties such as fines based on vague terms that do not give regulated entities adequate notice of whether or how the law applies and what entities can do to comply.

352.    Article I, § 6 of the New York Constitution protects against government deprivation of life, liberty or property without due process of law.

353.    Bill 371-A imposes its regulation based on a myriad of vague terms that prevent PCCNY, BPCC and Good Counsel from knowing whether or how the law applies and what they can do to comply, and allows the imposition of penalties on them without warning.

354.    The vagueness of Bill 371-A gives the City and the Commissioner unconstitutional discretion to apply the law in an unconstitutionally discriminatory and arbitrary fashion against PCCNY, BPCC and Good Counsel.

355.    PCCNY, BPCC and Good Counsel are unconstitutionally chilled in their exercise of speech and viewpoint-motivated activity regarding pregnancy because of the vagueness of Bill 371-A, and without declaratory and injunctive relief they will continue to be so chilled.

356.    Bill 371-A's existence and enforcement by the Commissioner will irreparably harm PCCNY, BPCC, and Good Counsel by infringing upon their right to due process.

357.    PCCNY, BPCC and Good Counsel have no adequate remedy at law.

55

## FIFTH CAUSE OF ACTION:
## UNBRIDLED DISCRETION
## IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS
## OF THE UNITED STATES CONSTITUTION
## AND ARTICLE I, § 8 OF THE NEW YORK CONSTITUTION

358.    The allegations of the paragraphs above are reasserted here.

359.    The First Amendment of the United States Constitution protects the freedom of speech, and the Fourteenth Amendment right to due process protects against giving government unbridled discretion in its application of laws including those related to speech.

360.    Article I, § 8 of the New York Constitution protects the freedom of speech and expression to an even greater degree than does the First Amendment of the U.S. Constitution.

361.    By allowing the Commissioner unbridled discretion in interpreting and enforcing Bill 371-A against pregnancy services centers, Bill 371-A impermissibly allows the City and the Commissioner to engage in viewpoint discrimination by applying the law due to government bias against abortion-opposing facilities and in favor of abortion-supporting facilities.

362.    By allowing the Commissioner unbridled discretion in interpreting and enforcing Bill 371-A against pregnancy services centers, Bill 371-A impermissibly allows the City and the Commissioner to apply the law arbitrarily.

363.    Bill 371-A's history and the 371-A Report suggest that the City's intention is precisely to have the law applied to the detriment of abortion-opposing centers only.

364.    PCCNY, BPCC and Good Counsel engage in the kinds of pregnancy-related speech and viewpoint-motivated activities that the Commissioner is likely to use his unbridled discretion under Bill 371-A to target.

365.    Bill 371-A unconstitutionally fails to provide timely access to appeal procedures.

366.    The Commissioner's exercise of his unbridled discretion under Bill 371-A to target PCCNY, BPCC and Good Counsel with penalties would prevent their exercise of speech and viewpoint-motivated activity, cause them extremely burdensome financial harm, and potentially close their facilities, depriving women of their free assistance.

367.    PCCNY, BPCC and Good Counsel are unconstitutionally chilled in their exercise of speech and viewpoint-motivated activity regarding pregnancy because of the unbridled discretion that Bill 371-A gives to the Commissioner to target them for penalty, and without declaratory and injunctive relief, they will continue to be so chilled.

368.    Bill 371-A's existence and enforcement by the Commissioner will irreparably harm PCCNY, BPCC, and Good Counsel by infringing upon their right to free speech and expression.

369.    PCCNY, BPCC and Good Counsel have no adequate remedy at law.

**SIXTH CAUSE OF ACTION:**
**FREEDOM OF ASSEMBLY**
**IN VIOLATION OF THE FIRST AMENDMENT**
**OF THE UNITED STATES CONSTITUTION**
**AND ARTICLE I, § 9 OF THE NEW YORK CONSTITUTION**

370.    The allegations of the paragraphs above are reasserted here.

371.    The First Amendment of the United States Constitution protects the freedom of association and assembly against government intrusion.

372.    Article I, § 9 of the New York Constitution protects the freedom of association and assembly against government intrusion.

373.    The penalties of Bill 371-A force PCCNY, BPCC and Good Counsel to cease meeting and assembling with women to deliver their informational services and viewpoint-

motivated assistance to pregnant women unless and until PCCNY, BPCC and Good Counsel comply with Bill 371-A.

374.    Bill 371-A imposes an unconstitutional burden on free association and assembly.

375.    Defendants have no compelling interest in furtherance of Bill 371-A's burden on free association and assembly.

376.    Bill 371-A's burden on free association and assembly is not narrowly tailored to serve such an interest.

377.    PCCNY, BPCC and Good Counsel are unconstitutionally burdened and chilled in their free association and assembly because of Bill 371-A, and they will continue to be so burdened and chilled without declaratory and injunctive relief.

378.    Bill 371-A's existence and enforcement by the Commissioner will irreparably harm PCCNY, BPCC, and Good Counsel by infringing upon their right to free association and assembly.

379.    PCCNY, BPCC and Good Counsel have no adequate remedy at law.

**SEVENTH CAUSE OF ACTION:**
**EQUAL PROTECTION**
**IN VIOLATION OF THE FOURTEENTH AMENDMENT**
**OF THE UNITED STATES CONSTITUTION**
**AND ARTICLE I, § 11 OF THE NEW YORK CONSTITUTION**

380.    The allegations of the paragraphs above are reasserted here.

381.    The Fourteenth Amendment of the United States Constitution provides that Defendants may not deny to any person within their jurisdiction the equal protection of the laws.

382.    Article I, § 11 of the New York Constitution provides that Defendants may not deny to any person within their jurisdiction the equal protection of the laws.

383.     Bill 371-A singles out PCCNY, BPCC and Good Counsel for special speech regulations that are not and will not be required of speakers at abortion facilities.

384.     Bill 371-A singles out PCCNY, BPCC and Good Counsel for special speech regulations that are not and will not be required of most other speakers discussing pregnancy or offering pregnancy services in the City.

385.     Bill 371-A singles out PCCNY, BPCC and Good Counsel for special disclosures emphasizing abortion and emergency contraception even though Bill 371-A does not require speakers at abortion facilities to engage in disclosures emphasizing abortion alternatives or the life of the unborn child.

386.     Bill 371-A imposes these restrictions arbitrarily and capriciously, including because they City lacked any credible evidence that actual clients of Plaintiffs or of other pregnancy centers in the City mistakenly believe that the centers provide medical services.

387.     Bill 371-A violates Plaintiffs' right to equal protection of the laws.

388.     Defendants have no compelling or legitimate interest in furtherance of Bill 371-A's denial of equal protection.

389.     Bill 371-A's denial of equal protection is not narrowly tailored or rationally related to serve such an interest.

390.     PCCNY, BPCC and Good Counsel are unconstitutionally burdened and chilled in their delivery of informational services and viewpoint-motivated assistance to pregnant women because of Bill 371-A, and they will continue to be so burdened and chilled without declaratory and injunctive relief.

391.    Bill 371-A's existence and enforcement by the Commissioner will irreparably
harm PCCNY, BPCC, and Good Counsel by infringing upon their right to equal protection of the
laws.

392.    PCCNY, BPCC and Good Counsel have no adequate remedy at law.

## EIGHTH CAUSE OF ACTION:
## OVERBROAD RESTRICTION ON SPEECH
## IN VIOLATION OF THE FIRST AMENDMENT
## OF THE UNITED STATES CONSTITUTION
## AND ARTICLE I, § 8 OF THE NEW YORK CONSTITUTION

393.    The allegations of the paragraphs above are reasserted here.

394.    The First Amendment of the United States Constitution protects the freedom of
speech from regulations that burden free speech in an overbroad way.

395.    Article I, § 8 of the New York Constitution protects the freedom of expression
and the press to an even greater degree than does the First Amendment of the U.S. Constitution.

396.    Bill 371-A regulates speech by and about pregnancy services centers possibly
including Plaintiffs as PSCs.

397.    Bill 371-A's burdens on speech are unconstitutionally and substantially
overbroad.

398.    Bill 371-A's overbreadth includes, but is not limited to: the threat that Bill 371-A
requires its disclosures to be included in "any advertisement" of the services of a PSC even when
that advertisement is made by a third party at no cost to the PSC, and the threat that the penalties
of Bill 371-A could be applied against a PSC and/or the third party for such advertisements if
they do not include the required disclosures.

399.    Third parties who support and endorse the work of Plaintiffs voluntarily promote Plaintiffs and their services, for free, in outlets including but not limited to their own websites and church publications.

400.    PCCNY, BPCC and Good Counsel have standing to challenge Bill 371-A's threatened restrictions on third party promotions of their services, and other speech to which Bill 371-A applies in a substantially overbroad way.

401.    Defendants have no compelling interest in furtherance of Bill 371-A's overbroad burdens on speech.

402.    Bill 371-A's overbroad burden on speech is not narrowly tailored to serve such an interest.

403.    Bill 371-A unconstitutionally burdens the freedom of speech and the press in a substantially overbroad way and will continue to do so without declaratory and injunctive relief.

404.    Bill 371-A's existence and enforcement by the Commissioner will irreparably harm PCCNY, BPCC, and Good Counsel and speech that Bill 371-A burdens in an unconstitutionally and substantially overbroad way.

405.    PCCNY, BPCC and Good Counsel have no adequate remedy at law.

## NINTH CAUSE OF ACTION:
### LEGISLATION INCONSISTENT WITH AND PREEMPTED BY STATE LAW IN VIOLATION OF NEW YORK MUNICIPAL HOME RULE LAW § 10

406.    The allegations of the paragraphs above are reasserted here.

407.    New York Municipal Home Rule Law § 10 prohibits the City of New York from legislating inconsistent with or preempted by laws of the State of New York.

61

408.    The State of New York has legislated in the field of licensure of medical facilities, medical providers, the scope of what constitutes medical practice, and the scope of performance and supervision of medical activities, and has preempted those fields.

409.    Bill 371-A violates New York Municipal Home Rule Law by legislating inconsistent with and in a field preempted by New York Law by giving the Commissioner the discretion to determine that self-administered pregnancy tests are medical services that must be performed by a licensed medical facility or performed or supervised by a licensed medical provider, and can be penalized with compelled disclosures, fines or other penalties if they do not comply.

410.    Bill 371-A violates New York Municipal Home Rule Law by legislating inconsistent with and in a field preempted by New York Law by giving the Commissioner the discretion to determine that any nonmedical "services" of a pregnancy service center are medical services that must be performed by a licensed medical facility or performed or "supervised" by a licensed medical provider, and can be penalized with compelled disclosures, fines or other penalties if they do not comply.

411.    Bill 371-A violates New York Municipal Home Rule Law by legislating inconsistent with and in a field preempted by New York Law by giving the Commissioner the discretion to determine that certain "services" must be "directly" supervised by a licensed medical provider in excess of the level of supervision that satisfies the requirements of state law, and can be penalized with compelled disclosures, fines or other penalties if such supervision does not occur.

412.    Bill 371-A violates New York Municipal Home Rule Law by legislating inconsistent with and in a field preempted by New York Law by giving the Commissioner the

discretion to determine that a nonmedical "service" is capable of being supervised by a licensed medical provider in his capacity as a licensed medical provider, and can be penalized with compelled disclosures, fines or other penalties if such supervision does not occur.

413.    PCCNY, BPCC and Good Counsel are chilled in their provision of speech and viewpoint-motivated activity regarding pregnancy because of the enactment of Bill 371-A inconsistent with and in violation of preempted state law, and without declaratory and injunctive relief they will continue to be so chilled.

414.    Bill 371-A's existence and enforcement by the Commissioner will irreparably harm PCCNY, BPCC, and Good Counsel.

415.    PCCNY, BPCC and Good Counsel have no adequate remedy at law.

**TENTH CAUSE OF ACTION:**
**FAILURE TO COMPLY WITH PROCEDURE**
**REQUIRED UNDER NEW YORK MUNICIPAL HOME RULE LAW,**
**THE CITY CHARTER, AND ADMINISTRATIVE CODE**

416.    The allegations of the paragraphs above are reasserted here.

417.    Municipal Home Rule Law § 20(4) provides that "[n]o local law shall be passed until it shall have been in its final form and either (a) upon the desks or table of the members at least seven calendar days, exclusive of Sunday, prior to its final passage, or (b) mailed to each of them . . . at least ten calendar days, exclusive of Sunday, prior to its final passage." *See also* N.Y. City Charter § 36.

418.    Municipal Home Rule Law § 20(5) provides that no local law shall be approved "by the elective chief executive officer until a public hearing thereon has been had before him."

419.    Pursuant to Administrative Code of the City of New York § 3-208, notice of this hearing before the Mayor "shall be published in the City Record and in such daily newspaper or

newspapers, published in the City of New York, as shall be selected by the Mayor for that purpose."

420.    The City Council's Committee on Women's Issues approved the final form of Bill 371-A on March 1, 2011.

421.    On March 2, 2011, less than 24 hours later, the New York City Council approved and adopted Bill 371-A.

422.    This approval violated Municipal Home Rule Law § 20(4).

423.    The mayor signed Bill 371-A into law on March 16, 2011.

424.    Upon information and belief, no public hearing on Bill 371-A occurred before Mayor Bloomberg, nor did public notice of such appear in any publication

425.    Signing Bill 371-A into law without having met these requirements violated Municipal Home Rule Law § 20(5) and Administrative Code § Section 3-208.

426.    The Mayor's and the City Council's failure to follow basic procedural laws applicable to the passage of 371-A further suggests that the motivation behind 371-A was to pass a law against the abortion-opposing viewpoint of pregnancy centers without giving them and their supporters a full, fair, and public opportunity to challenge the final version of the bill.

427.    PCCNY, BPCC and Good Counsel are chilled in their provision of speech and viewpoint-motivated activity regarding pregnancy because of the enactment of Bill 371-A inconsistent with and in violation of New York Municipal Home Rule Law § 20, the City Charter, and the Administrative Code, and without declaratory and injunctive relief they will continue to be so chilled.

428.    Bill 371-A's existence and enforcement by the Commissioner will irreparably harm PCCNY, BPCC, and Good Counsel.

429.   PCCNY, BPCC and Good Counsel have no adequate remedy at law.

### ELEVENTH CAUSE OF ACTION:
### PROHIBITION OF CHILD ABUSE REPORTING
### IN VIOLATION OF NEW YORK SOCIAL SERVICES LAW
### AND NEW YORK MUNICIPAL HOME RULE LAW

430.   The allegations of the paragraphs above are reasserted here.

431.   New York Social Services Law § 411, et seq., allows persons and entities to report knowledge of child abuse to the statewide central registrar of child abuse and maltreatment, the administration for children's services, or the police department, in a variety of circumstances.

432.   New York Social Services Law § 411, et seq., specifies that the "abuse" that it covers only relates to abuse by a "parent or guardian legally responsible for such person's care."

433.   New York Social Services Law § 411, et seq., nevertheless allows reporting of abuse of minors, that is a violation of New York Penal Law, but that is not perpetrated by a "parent or guardian legally responsible for such person's care," including allowing reporting of such abuse by Plaintiffs.

434.   Bill 371-A § 20-817, however, functions to prohibit disclosure of information to such a broad degree that it includes prohibiting the reporting of child abuse in violation of New York Penal Law unless the abuse is perpetrated by a "parent or guardian legally responsible for such person's care."

435.   Bill 371-A therefore prohibits Plaintiffs from reporting illegal child abuse that New York state law otherwise allows and encourages persons to report.

436.   Bill 371-A violates New York Municipal Home Rule Law by legislating inconsistent with and in a field preempted by New York Law.

437.    Bill 371-A endangers children who are illegally abused by persons other than a "parent or guardian legally responsible for such person's care," prevents Plaintiffs from reporting such abuse to appropriate agencies, and subjects Plaintiffs to liability for the failure to so report.

438.    PCCNY, BPCC and Good Counsel have no adequate remedy at law.

WHEREFORE, Plaintiffs PCCNY, BPCC and Good Counsel respectfully pray that the Court grant the declaratory and injunctive relief set forth herein and award such other relief to the Plaintiffs as is reasonable, just and necessary.

## PRAYER FOR RELIEF

Plaintiffs respectfully requests that the court:

(a) Declare Bill 371-A unconstitutional and in violation of state law on its face and/or as-applied to Plaintiffs, and declare its unconstitutional and illegal provisions unseverable;

(b) Enter preliminary and permanent injunctions against Defendants' enforcement of Bill 371-A in its entirety, and in each of its provisions;

(c) Award Plaintiffs costs of the litigation, including reasonable attorneys' fees and expenses under 42 U.S.C. § 1988, and;

(d) Award any and all other relief the Court deems just and proper.

Plaintiffs request a jury trial on all claims so triable.

DATED:  April 5, 2011,

New York, New York.

Respectfully submitted,

M. Todd Parker (SDNY # MP4548)
MOSKOWITZ & BOOK, LLP
345 Seventh Avenue, 21st Floor
New York, NY 10001
(212) 221-7999
mparker@mb-llp.com

Tom Marcelle (SDNY # TM2649)
ALLIANCE DEFENSE FUND
2 E-Comm Square, 3rd Floor
Albany, New York 12207
(518) 427-1720
tmarcelle@telladf.org

Matthew S. Bowman* (DC Bar # 993261)
ALLIANCE DEFENSE FUND
801 G Street NW, Suite 509
Washington, DC 20001
(202) 393-8690
mbowman@telladf.org

*Pro hac vice application forthcoming.

67

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Joanne Reilly, on behalf of Pregnancy Care Center of New York (incorporated as Crisis Pregnancy Center of New York), declare the following:

I am the Executive Director of Pregnancy Care Center of New York (incorporated as Crisis Pregnancy Center of New York), of Staten Island, New York, a named plaintiff in the above mentioned case. I have read the foregoing Verified Complaint and state under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated this 1st day of April, 2011

Joanne Reilly, on behalf of Pregnancy Care Center
of New York (incorporated as Crisis Pregnancy
Center of New York)

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Christopher Bell, on behalf of Good Counsel Homes, declare the following:

I am the executive director of Good Counsel Homes of Hoboken, New Jersey, a named plaintiff in the above mentioned case. I have read the foregoing Verified Complaint and state under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated this 1st day of April, 2011

Christopher Bell, on behalf of
Good Counsel Homes

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Nicole Baker Bernacet, on behalf of Boro Pregnancy

Counseling Center, declare the following:

I am the executive director of Boro Pregnancy Counseling Center of Bayside, New York,

a named plaintiff in the above mentioned case. I have read the foregoing Verified Complaint and

state under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated this 1st day of April, 2011

Nicole Baker Bernacet, on behalf of
Boro Pregnancy Counseling Center